# EXHIBIT A

AUDIO POD IP, LLC,

     Plaintiff,

   v.

AMAZON.COM, INC.;
AMAZON.COM LLC; AMAZON
WEB SERVICES, INC., and
AUDIBLE, INC.

     Defendants.

Lead Case No. 3:24-cv-00406-RCY

**STIPULATION REGARDING THE PRODUCTION OF
DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

The following Order Regarding Document Discovery (the "Order") shall apply to all

discovery of Electronically Stored Information ("ESI") and hard-copy documents in this case,

unless the parties agree in advance and in writing or if the Order is modified by the Court. By

stipulating to this Order and agreeing to produce documents, generally, in a particular form or

forms, no party waives any objections to producing any particular document or category of

documents on any grounds whatsoever. Nothing in this Protocol alters a party's rights,

obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and

other applicable law, nor does anything in this Protocol impose additional burdens beyond

those imposed by the Federal Rules of Civil Procedure and other applicable law. The parties

reserve all objections under the Federal Rules of Civil Procedure and other applicable law for

matters relating to the production of data that are not specifically addressed in this Protocol,

including but not limited to the proportionality requirements set forth in Federal Rule of Civil

Procedure 26(b)(1) and the ability for the Court to apportion the costs of electronic discovery under the Federal Rules of Civil Procedure. The parties agree that documents produced according to this Protocol are in a reasonably usable form.

## I.      **Production Format**

(a)      The parties agree to meet and confer in good faith to determine a reasonable production format for documents stored in a wiki or similar electronic repository.

(b)      General Provisions. Unless the parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. All images should be provided in single-page, Group IV TIFF with a resolution of 600 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image.

(c)      Document Text. All unredacted documents should be provided with complete document-level extracted text files, to the extent such text exists. In the event a document contains text that is to be redacted, OCR text files should be provided for any unredacted portions of the documents, including for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder.

(d)      Parent-Child Relationships. For email collections, the parent-child relationships (the association between emails and attachments) should be preserved. Email attachments should be consecutively produced with the parent email record.

(e)      Not Reasonably Convertible Data. For documents and ESI that do not convert well

to TIFF (e.g. oversized drawings, picture files, including without limitation Microsoft Excel and audio and video files), the producing party will either produce the document in native format or will ask the receiving party to meet and confer regarding a reasonable alternative form of production. The file name for the documents produced in native form will consist of a Bates number. For native files included in a production, the corresponding placeholder TIFF image will also be provided and will reflect the document's Bates number.

(f) Embedded Files. Embedded files may be produced as family groups. If produced, embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded. If a party requests the production of specific embedded files, the parties agree to timely meet and confer regarding the request.

(g) Compressed Files. ESI files that, as kept in the ordinary course of business, had file types with compression (e.g., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a recursive manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

(h) Time Zone. All metadata provided pertaining to dates and times will be standardized to UTC.

(i) Load File Formats. ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding. Load file specifications can be found in Appendix I infra.

(j) Deduplication. The parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 hash value as compared against the same document type (i.e., family or stand-alone file). The names of

all custodians who were in possession of a document prior to deduplication will be populated in the ALL_CUSTODIANS metadata field. The original file paths of a document prior to deduplication will be populated. Only a single copy of exact duplicate ESI family needs to be produced.

(k) <u>Metadata to be Produced</u>. The metadata fields detailed in Exhibit A should be produced for each document to the extent that such information is available at the time of collection and processing, except if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

(l) <u>Excluded File Types</u>. The parties agree that there is no need to preserve or collect ESI from the following sources, which are deemed to not likely contain relevant information and to be not reasonably accessible:

(i) Voicemails.

(ii) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(iii) On-line access data such as temporary internet files, history, cache, cookies, and the like.

(iv) Back-up data that is substantially duplicative of data that is more accessible elsewhere.

(v) Server, system or network logs.

(vi) SMS or other text files, IM files.

(vii) Employees' personal social media/social networking data.

(viii) Data remaining from systems no longer in use that is unintelligible on the systems in use.

(m) Production Format for Hard Copy Documents. Documents that exist in hardcopy will be scanned to *.tiff image format and produced electronically. Hard copy documents that are not text-searchable shall be made searchable by Optical Character Recognition (OCR) prior to

production. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records. The unitization and scanning protocol to be utilized can be found in Appendix II *infra*.

(n)     Encryption. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

(o)     Translations. The parties agree that documents shall be produced in the language in which they are ordinarily kept, except that the producing party will be required to also produce any English translation of such documents that is in its possession. Each party, to the extent necessary, shall bear its own costs for translating documents produced in the above-captioned matter.

## II.     **Scope of Email Discovery**

(a)     Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe.  Each producing party may, at its election, review emails that contain any agreed upon search terms for responsiveness and privilege prior to production.

(b)     A search term in English and a foreign language equivalent shall count as one search. The search terms shall be narrowly tailored to particular issues rather than general discovery of a product or business. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system")

broadens the search, and thus each word or phrase shall count as a separate search term. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

(c)     Each side may identify a limited number of custodians of the other side to search for responsive emails and a limited number of search terms per custodian; however, the parties do not agree as to the maximum number of custodians or search terms. Amazon proposes up to five (5) custodians and up to five (5) search terms may be appropriate provided that the searches are relevant and proportional to the needs of the case. Audio Pod proposes up to ten (10) custodians of the other side to search for responsive emails and up to fifteen (15) search terms per custodian. The parties agree to meet and confer in good faith to the extent more than five (5) custodians and more than five (5) search terms are requested. Absent agreement among the parties, the matter shall be presented to the Court for resolution. All requests for email shall be limited to those reasonably necessary for a party's claims or defenses and must be proportional to the needs of the case.

(d)     The producing side will run each search term against bulk email account databases and/or email archive files (e.g., PSTs) for emails and/or email attachments for the relevant custodian(s) and provide (1) the number of hits for each search term, (2) the number of unique hits for each search term, and (3) the total number of hits across all search terms within twenty-one (21) days of receiving identification of the requested custodian, time frame, and search terms. If a custodian has more than one email account or alias within a company, all relevant accounts shall be searched. If a requested search term returns more hits than practicable, or substantially encompasses irrelevant documents, the parties shall meet and confer to narrow the search term.

## III. <u>Third Parties</u>

(a) If a subpoena issuing party receives any hard-copy documents or native files from a non-party, the subpoena issuing party will produce or make available for inspection the documents to the other party in the case within ten (10) days.

(b) If the non-party production is not Bates-stamped, the subpoena issuing party will apply unique prefixes for the non-party production and Bates numbers prior to producing them to all the other parties in the case.

By stipulation, the parties agree to, and the Court orders, the above-mentioned ESI protocols.

Dated: February 5, 2025

/s/ Chandran B. Iyer
Ronald M Daignault (pro hac vice)*
Chandran B. Iyer (VA Bar No. 94100)
Steven J. Reynolds (pro hac vice)*
Shailendra Maheshwari (pro hac vice)*
Hoda Rifai-Bashjawish (pro hac vice)*
Kevin H. Sprenger (VA Bar No. 98588)
Matthew Harkins (pro hac vice)*
James J. Hatton (pro hac vice)*
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
sreynolds@diagnaultiyer.com
smaheshwari@daignaultiyer.com
hrifai-bashjawish@daignaultiyer.com
ksprenger@daignaultiyer.com
mharkins@daignaultiyer.com
jhatton@daignaultiyer.com
Daignault Iyer LLP
8229 Boone Boulevard – Suite 450
Vienna, VA 22182
Tel.: (202) 330-1666

Benoit Quarmby (pro hac vice)*
bquarmby@mololamken.com
MoloLamken LLP

Respectfully submitted,

/s/ William R. Poynter
William R. Poynter
wpoynter@kaleolegal.com
Virginia State Bar No. 48672
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach VA 23462
Tel: (757) 238-6383
Fax : (757) 304-6175

*Of Counsel:*

Andrea L. Cheek
andrea.cheek@knobbe.com
KNOBBE, MARTENS, OLSON
& BEAR, LLP
1717 Pennsylvania Ave, NW, Ste 900
Washington, D.C. 20006
Tel: (202) 640-6400
Fax: (202) 640-6401

Colin B. Heidman (Pro Hac Vice)
colin.heideman@knobbe.com
Christie Matthaei (Pro Hac Vice)
christie.matthaei@knobbe.com

430 Park Avenue, 6th Floor
New York, NY 10022
Tel. (212) 607-8157

*Attorneys for Plaintiff Audio Pod IP LLC*

*\*Not admitted to practice in Virginia*

KNOBBE, MARTENS, OLSON
& BEAR, LLP
925 4th Ave, Ste 2500
Seattle, WA 98104
Tel: (206) 405-2000
Fax: (206) 405-2001

Jeremy A. Anapol (Pro Hac Vice)
jeremy.anapol@knobbe.com
KNOBBE, MARTENS, OLSON
& BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502

*Attorneys for Defendants Amazon.com, Inc.,
Amazon.com LLC, Amazon Web Services, Inc.,
and Audible, Inc.*

**PURSUANT TO STIPULATION, IT IS SO ORDERED**

DATED: _____        _____
                                         United States District Judge

# ORDER REGARDING DOCUMENT DISCOVERY - EXHIBIT A

The metadata fields detailed in this Exhibit A should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

The specific naming of the field names identified below may be altered comport with the parties' internal conventions so long as the different field name accurately describes the information contained in the field and the naming convention is used consistently for all productions (e.g., "Production Begin" instead of "Prod Beg").

| Field Name | Field Description |
|---|---|
| Prod Beg | Start Bates (including prefix) -- No spaces or special characters |
| Prod End | End Bates (including prefix) - No spaces or special characters; Last Bates number of the tiffed native file document/email **The Prod End field should be populated for single page documents/emails. |
| Prod Beg Attach | First Bates number of document family range |
| Prod End Attach | Last Bates number of document family range |
| Custodian | Custodian(s) / source(s) - format: Last, First or ABC Dept or ABC |
| All Custodians | All Custodian(s) / source(s) - format: Last, First or ABC Dept or ABC |
| File Name | Native: Name of the original native file, including extension |

1

| Field Name | Field Description |
| --- | --- |
| Has Redactions | Y/N field to indicate whether or not there is a redaction |
| Confidentiality | Designation of confidentiality as provided by the parties' protective order |
| File Path | Name of the top-level folder where the document resided prior to collection (e.g., server/documents/top-level-folder-name), unless the document was not from a custodial source, in which case it would be the top-level folder name of the destination to which the document was downloaded. |
| Document Author | Native: Author of the document/Author field value extracted from the metadata of a native file |
| Email Subject | Email or calendar subject |
| Email To | Recipient(s) of the Email |
| Page Count | Number of pages in the tiffed native file document/email |
| Email BCC | Names of the individuals who were blind-copied on the Email (as formatted on the original) |
| Email From | Author of the Email or Calendar item (as formatted on the original) |
| Email CC | Names of the individuals who were copied on the Email (as formatted on the original) |
| Date-Time Sent | Email: Date the Email was sent Native: (empty)<br>Time Email was sent -- Format: HH:MM (use 12 hour times, e.g., 1:32 pm; timezone indicators cannot be included) / Time the email message was sent. Must be separate from DateSent field. |
| Date Created | Email: (empty)<br>Native: Date the document was created |

| Field Name | Field Description |
| --- | --- |
| MD5HASH | MD5 Hash value of the document |
| Native Path/Doc Link | File path location to the current native file location on the delivery medium; linked file must be named per the Prod Beg number |
| Extracted Text/OCR Text Path | Path to extracted text of the native file |
| File Extension | File extension of native file |
| Num Attach | Total number of records attached to the document |
| Record Type/File Description/File Type | Displays the record type for each entry in the load file (e.g., document or email) |
| File Size | Size of native file document/email in KB; File size in Bytes (integer value only - do not include unit of measure or decimal places - e.g., 568) |
| Date-Time Received | Date Email was received<br>Time Email was received. Format: HH:MM (use 12 hour times, e.g., 1:32 pm; timezone indicators cannot be included) |

## APPENDIX I: FILE FORMATS

**A. Image Load Files**

- Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped in the production volume.

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii extension *(e.g.,* ABC001.lfp). (If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.)

- The volume names shall be consecutive *(i.e.,* ABC001, ABC002, *et. seq.).*

- The load file shall contain one row per Tiff image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.

- Load files shall ***not*** span across media *(e.g.,* CDs, DVDs, Hard Drives, etc.), *i.e.,* a separate volume shall be created for each piece of media delivered.

**B. Metadata Load files**

- The metadata load file shall use the following delimiters: Columns - Comma (ASCII: 20)
  Quote - þ (ASCII: 254)

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The first row shall contain the field names.

- All date and time fields are populated in the mm/dd/yyyy and hh:mm AM/PM formats without leading zeros. For example, the month of April would be a "4" rather than a "04".

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall ***not*** span across media *(e.g.,* CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension *(i.e.,* ABC001.dat).

- The volume names shall be consecutive *(i.e.,* ABC001, ABC002, et. seq.).

## APPENDIX II: SCANNING AND UNITIZATION

- Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Settings for "AutoSkewing," "Auto-Rotation" and "Zone Location" should be turned on when documents are run through the process, to the extent available.

- Physical document boundary determination will be based on the smallest physical binding element. The following binding elements will be used to determine document boundaries:

  o Staples, Clips, Rubber Bands, Binder Clips - These binding elements at the smallest level will be used to determine the document boundary.

  o Consecutive Single/Loose Pages - If a series of loose pages exist, each loose page will be captured as an individual document

  o Bound Items (e.g., books, spiral bound) - All bound items will be tracked as a single unit for identification.

  o Computer Forms - Non-perforated computer paper will be captured as one document.

  o Post-It Notes - Post-It Notes will be captured.

- Physical attachment associations are determined by common physical barriers. Where there are nested common physical barriers, the inner-most barrier will be captured as the attachment association. The following physical barriers will be used to determine the physical attachment association:

  o Manila File Folder

- Parent Clip
- Hanging File Folder
- Redweld File
- Binder
- Parent Rubber Band