IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUDIO POD IP, LLC,                          )
    Plaintiff,                          )
                                            )
        v.                          )          Lead Civil Action No. 3:24cv406 (RCY)
                                            )          Civil Action No. 3:24cv407 (RCY)
AMAZON.COM, INC., *et al.*,                  )
    Defendants.                         )
                                            )

## MEMORANDUM OPINION

This is a consolidated patent infringement action brought by AudioPod IP, LLC ("Plaintiff") against Amazon.com, Inc. ("Amazon.com"), Amazon.com Services LLC ("Amazon Services"), Amazon Web Services, Inc. ("AWS") (collectively, "Amazon," or "Defendants"). The instant matter is before the Court on Defendants' Motion to Dismiss with respect to Amazon.com and Defendants' separate Motion to Transfer. The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court finds it appropriate to grant the Motion to Dismiss as to Amazon.com and transfer the remainder of the action to the United States District Court for the District of New Jersey.[1]

## I. PROCEDURAL HISTORY

This case concerns a patent dispute and implicates four separate (but related) cases currently pending before three different courts: *Audio Pod IP, LLC v. Amazon.com, Inc., et al.*, Case Nos. 3:24cv406 (E.D. Va.) ("-406 case") and 3:24cv407 (E.D. Va.) ("-407 case")

---

[1] On March 31, 2026, the Court issued an Order, ECF No. 163, granting the Motions to Dismiss and Transfer and promising an opinion to follow. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

(collectively, the "Consolidated Action"); *Audio Pod IP, LLC v. Amazon.com, Inc. et al.*, Case No. 2:24cv185 (E.D. Va.) (the "Norfolk case"); and *Audio Pod IP, LLC v. Audible Inc.*, No. 2:25cv2198 (D.N.J.) (the "DNJ case").

Plaintiff first filed the Norfolk case on March 20, 2024, and then filed the -406 case and the -407 case together on May 30, 2024,  -406 Compl., Dkt. I, ECF No. 1;[2] -407 Compl., Dkt. II, ECF No. 1.  Although Plaintiff physically filed all three of these actions in the Alexandria Division, by operation of the Eastern District of Virginia's "patent wheel," the first-filed case was assigned to and filed in Norfolk, while the -406 and -407 cases were assigned to and filed in Richmond. Defendants filed Motions to Dismiss in each of the -406 and -407 cases on August 26, 2024.  -406 Mot. Dismiss, Dkt. I, ECF No. 17; -407 Mot. Dismiss, Dkt. II, ECF No. 16.  Specifically, Defendants sought in both motions to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), *see* -406 Mem. Supp. Mot. Dismiss ("-406 Mem. Supp.") 9–12, Dkt. I, ECF No. 18; -407 Mem. Supp. Mot. Dismiss ("-407 Mem. Supp.") 14–20, Dkt. II, ECF No. 17, and, with respect to solely the -406 matter, Defendants sought to dismiss the action against then-Defendant Audible for improper venue pursuant to Rule 12(b)(3), *see* -406 Mem. Supp. 17–20.

On January 15, 2025, the Court *sua sponte* found that both the -406 and -407 actions related "to the streaming and synchronizing of digital media streams" and concerned the same parties, and thus the Court ordered the consolidation of the actions.  Order, ECF No. 51 at 1 (identifying the -406 case as the lead case for purposes of the newly created Consolidated Action).  The Court preserved the pending Motions to Dismiss for separate adjudication, however.

On March 3, 2025, the Court granted in part and denied in part the -406 Motion to Dismiss, concluding that venue was improper as to then-Defendant Audible and therefore dismissing

---

[2] For ease of citation, the Court prefaces document names from Civil Case No. 3:24CV406 with "-406," and Civil Case No. 3:24CV407 with "-407."  The Court further prefaces docket (ECF) citations with "Docket I" and "Docket II" for cases -406 and -407, respectively.

2

Audible from the Consolidated Action; the Court otherwise denied the motion. Mem. Op. at 1, 26–32, Dkt. I, ECF No. 73. The Court denied the -407 Motion to Dismiss in full. *Id.*

Shortly thereafter, in the related Norfolk case, Judge Wright-Allen similarly found venue improper as to Audible and so severed and transferred Plaintiff's Audible claims to the District of New Jersey on March 31, 2025, thus giving rise to the DNJ case. *See* Norfolk Case, 2:24cv185, ECF No. 65 at 31. Plaintiff thereafter added to the DNJ action the claims against Audible that had been dismissed from the Consolidated Action. *See* DNJ Case, 2:25cv2198, ECF No. 77.

On July 3, 2025, notwithstanding the consolidation of the actions, Plaintiff filed an Amended Complaint in both the -406 and -407 cases. -406 Am. Compl., Dkt. I, ECF No. 94; -407 Am. Compl., Dkt. II, ECF No. 51. On July 16, 2025, Defendants filed the instant Motion to Dismiss, seeking dismissal of only Defendant Amazon.com. Mot. Dismiss, Dkt. I,[3] ECF No. 98; Mem. Supp. Dismissal, ECF No. 99. Then, on August 4, 2025, Defendants filed the instant Motion to Transfer. ECF No. 114; Mem. Supp. Transfer, ECF No. 115. Therein, Defendants (presupposing dismissal of Amazon.com) seek transfer of the Consolidated Action's claims against Defendants Amazon Services and AWS to the United States District Court for the District of New Jersey. Mem. Supp. Transfer 19. Plaintiff timely responded to both Motions, Opp'n Mot. Dismiss, ECF No. 109; Opp'n Mot. Transfer, ECF No. 134, and Defendants timely replied, Mot. Dismiss Reply, ECF No. 124; Mot. Transfer Reply, ECF No. 136, rendering both motions ripe.

## II. LEGAL STANDARDS

### A. 12(b)(6) Dismissal

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[3] Hereinafter, all record cites come from Docket I (the -406 case), unless otherwise noted.

defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

**B.  § 1404 Transfer**

Under 28 U.S.C. § 1404(a), a civil action may be transferred to another district or division if "(1) the claims might have been brought in the transferee forum, and (2) [the] interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (quoting *Koh v. Microtek Int'l., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)). The party seeking transfer "bears the

burden of proving that the circumstances of the case are *strongly* in favor of transfer." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (internal citations and quotations omitted) (emphasis in original). However, "the ultimate decision [of whether to transfer a case] is committed to the sound discretion of the district court." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); *see also Koh*, 250 F. Supp. 2d at 630. In deciding a motion to transfer, the pleadings need not be accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations. *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009) (citing *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006)).[4]

### III.  ANALYSIS

#### A.  Dismissal of Amazon.com

Defendants argue that Plaintiff has failed to state a claim against Amazon.com because Plaintiff relies on improper group pleading, in violation of Federal Rule of Civil Procedure 8(a), and because Plaintiff does not plausibly allege that Amazon.com was responsible for all the necessary steps of patent infringement, whether directly or by way of a theory of divided infringement, insofar as the mere fact of corporate ownership, alone, is insufficient to establish parent-company responsibility for the acts of a subsidiary. Defendants also assert that Plaintiff's willful infringement claim against Amazon.com must be dismissed, if there is no predicate, plausibly alleged infringement claim.

The Court first considers the extent of Plaintiff's allegations with respect to Amazon.com, before assessing whether such allegations are sufficient to state a plausible claim against this

---

[4] Here, the Court considers the various declarations and exhibits submitted by the parties in support of their respective positions on the instant motion to transfer.

particular defendant.    Ultimately, the Court concludes that Plaintiff has not, in fact, pleaded sufficient facts to state a claim for patent infringement against Amazon.com.

    1.  Relevant Factual Allegations[5]

In the -406 Amended Complaint, Plaintiff alleges that Defendants Amazon.com, Amazon Services, and AWS infringed on two of Plaintiff's patents:  the '907 patent and the '488 patent. -406 Am. Compl. at 1.[6]  Plaintiff refers to all three defendants together as "Amazon" and alleges that all three "made, used, offered to sell, offered to sell access to, sold, and/or sold access to" products termed "Amazon CloudFront Products and Services."  *Id*. ¶¶ 1, 15–16.  Plaintiff further asserts that the CloudFront Products infringe "at least one claim of each of the Patents-in-Suit.  *Id*. ¶ 16.

In the -407 Amended Complaint, Plaintiff similarly pleads that Defendants infringed upon four patents:  '720, '922, '266, and '488.  -407 Am. Compl. ¶ 1, Dkt. II, ECF No. 51.  Plaintiff refers to the same three Defendants collectively as "Amazon" and again alleges that all three "made, used, offered to sell, offered to sell access to, sold, and/or sold access to products and services" termed "Amazon Products and Services."  *Id*. ¶¶ 15–16.

In both actions, Plaintiff alleges and Defendants admit that Amazon Services is "a wholly owned subsidiary" of Amazon.com, and that AWS is "a subsidiary" of Amazon.com.  -406 Am. Compl. ¶¶ 6, 10; -407 Am. Compl. ¶¶ 6, 10; Answer to -406 Am. Compl. ¶¶ 6, 10, Dkt. I, ECF

---

[5] When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009).  At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged, and matters of public record subject to judicial notice. *Id.* 180.

[6] The Court utilizes the pagination assigned by the CM/ECF system for this and all other record cites.

No. 100; Answer to -407 Am. Compl. ¶¶ 6, 10, Dkt. I,[7] ECF No. 101.  However, Defendants deny Plaintiff's allegation that AWS is a "controlled" subsidiary of Amazon.com.  Answer to -406 Am. Compl. ¶ 10; Answer to -407 Am. Compl. ¶ 10.

    2. <u>Plaintiff Fails to State a Claim Against Amazon.com</u>

As a preliminary matter, the Court is not persuaded that Plaintiff's group pleading is, in and of itself, fatal to Plaintiff's claims against Amazon.com.  *See Hart v. Scholl's Wellness Co., LLC*, 2022 WL18777382, at \*3 (E.D. Va. July 29, 2022). ("The Fourth Circuit has never held that group pleading is prohibited *per se*.").  Rather, group pleading can be sufficient when it is "plausible that each defendant was involved in all of the facts as alleged." *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 280 (D. Md. 2020) (citations omitted).  The question thus becomes whether it is plausible that Amazon.com was involved in all of the collective acts allegedly committed by "Amazon."  This inquiry dovetails with Defendants' broader challenge, that Plaintiff has failed to plausibly allege infringing acts by Amazon.com, and so the Court examines the sufficiency of the allegations in full, below.

Plaintiff alleges that Defendants committed direct patent infringement under 35 U.S.C. § 271(a) by "making, using, selling, selling access to, importing, offering for sale, and/or offering to sell access" to infringing products.[8]  -406 Am. Compl. ¶¶ 15–16, 63, Dkt. I, ECF No. 94; -407 Am. Compl. ¶¶ 15–16, 74, Dkt. II, ECF No. 51.  Defendants argue that Plaintiff has failed to sufficiently plead direct infringement by Amazon.com because Plaintiff failed to allege that Amazon.com practiced every step of the alleged infringing method or that actions by subsidiaries

---

[7] Defendants docketed their Answer to the -407 Amended Complaint in the -406 action, per the Court's instruction at the time of consolidation that all further litigation was to proceed under the designated Lead Civil Action number, 3:24CV406.  *See* Order, Dkt. I, ECF No. 51.

[8] The Court agrees with Defendants' read of the Amended Complaints—which Plaintiff does not rebut—that Plaintiff "does not assert that any entity is liable for induced infringement under 35 U.S.C. § 271(b) or contributory infringement under § 271(c)."  Mem. Supp. Dismissal 5, ECF No. 99; Opp'n Mot. Dismiss, ECF No. 109.

at those steps were attributable to Amazon.com.  Mem. Supp. Dismissal 5–6, ECF No. 99; Mot. Dismiss Reply 7–12, ECF No. 124.  The Court finds Defendants' argument persuasive.

To hold an entity liable for direct infringement under § 271(a), a plaintiff must show that "all steps of a claimed method 'are performed by or attributable to [that] single entity.'" *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007)).  In cases of "divided infringement," i.e., "where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.*

Plaintiff does not allege that Defendant Amazon.com individually performed all steps of the claimed methods, such that Amazon.com, on its own, directly infringed on the Patents in Suit.  Instead, Plaintiff attributes infringement to Defendants as a group.  -406 Am. Compl. ¶¶ 15–16; -407 Am. Compl. ¶¶ 15–16.  Correspondingly, the survival of Plaintiff's claims against Amazon.com necessitates a successful showing of divided infringement under § 271(a), and thus that the infringing acts are attributable to Amazon.com.  *Akamai Techs., Inc.*, 797 F.3d at 1022.

An entity is responsible for the acts of another only "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.*  Plaintiff's allegations do not support either theory of responsibility.

Taking the latter first, a joint enterprise requires, among other things, "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* at 1023.  Plaintiff never alleges that parent Amazon.com and its subsidiaries had "an equal right to a voice in the direction of the enterprise, which gives an equal right of control," as is required for a finding of joint enterprise. *See generally* -406 Am. Compl.; -407 Am. Compl.; *Akamai Techs., Inc.*, 797 F.3d at 1023.  In fact, Plaintiff alleges in both Amended Complaints that "AWS is a . . . *controlled*

8

affiliate of defendant Amazon.com, Inc."  -406 Am. Compl. ¶ 10; -407 Am. Compl. ¶ 10 (emphasis added).  As this is a legal conclusion not entitled to a presumption of truth, the pertinent question becomes whether Amazon.com directed or controlled the actions of Amazon Services or AWS.

Turning to direction and control, the law recognizes two general principles of corporate control in the patent infringement space.  *IBM Corp. v. Booking Holdings*, 775 F. App'x 674, 678 (Fed. Cir. 2019).  "First, 'an actor is liable for infringement . . . if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method' (the 'agency test')."  *Id*. (quoting *Akami Techs., Inc*., 797 F.3d at 1023).  Alternatively, liability under § 271(a) "can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner and timing of that performance" (the 'benefit test')."  *Akami Techs., Inc*., 797 F.3d at 1023.

There is also no allegation by Plaintiff that Amazon.com "condition[ed] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method" (the "benefit test")."  *See generally* -406 Am. Compl.; -407 Am. Compl.;  *Akami Techs., Inc.*, 797 F.3d at 1023.  As a result, Plaintiff's only option is to show that Amazon.com participated in divided infringement under § 271(a) by way of the "agency test."  *Akami Techs., Inc.*, 797 F.3d at 1023.  Plaintiff fails to do so.

Simply alleging corporate ownership does not satisfy the agency inquiry.  *See Midwest Energy Emissions Corp. v. Berkshire Hathaway Energy Co.*, 762 F. Supp. 3d 788, 812 (S.D. Iowa 2025) (pleading was insufficient to show direction or control where it "consist[s] largely of facts that would be present in virtually any parent-subsidiary relationship"); *BlackBerry Ltd. v. Nokia Corp.*, 2018 WL 1401330, at *2 (D. Del. Mar. 20, 2018) (dismissing patent infringement claims against parent company where the "complaint does not state facts supporting the existence of an

agency relationship"). And as stated before, Plaintiff's allegations of "control" are legal conclusions, not entitled to the presumption of truth.

In opposition to the Motion to Dismiss, Plaintiff attempts to buttress the Amended Complaints with excerpts from Defendants' SEC disclosures. Opp'n Mot. Dismiss 8–11. However, while the SEC filings might be considered matters of public record and therefore subject to judicial notice, *Philips*, 572 F.3d at 180, the Court is not persuaded that the language so heavily relied on by Plaintiff—emphasized instances of "we" and "our," *see* Opp'n Mot. Dismiss 8— indicates anything more than the unexceptional trappings of a parent-subsidiary relationship, *cf.* Opp'n Mot. Dismiss Ex. 3 at 4 (Amazon.com's annual Form 10-K, in which it is described that, "[a]s used herein, 'Amazon.com,' 'we,' 'our,' and similar terms include Amazon.com, Inc. and its subsidiaries, unless the context indicates otherwise"). Nor is the Court persuaded that an agency relationship exists based on the mere fact that one of Amazon.com's executive officers previously served as the CEO of AWS. Opp'n Mot. Dismiss 9 (excerpting and annotating a portion of Opp'n Mot. Dismiss Ex. 3 at 5).[9]

Because Plaintiff fails to allege anything more than a parent-subsidiary relationship in their Amended Complaints, Plaintiff has failed to plausibly allege that Amazon.com controlled Amazon Services or AWS with respect the alleged infringement, and therefore Plaintiff has failed to state a claim against Amazon.com for divided—and thus direct—infringement. And because Plaintiff has not stated a claim against Amazon.com for direct infringement, its enhanced claim of willful infringement necessarily fails as well. The Court accordingly grants the Motion to Dismiss.

---

[9] The Court does not find plausible Plaintiff's interpretation of this list of "our executive officers" to mean that an Amazon.com executive officer *also* serves as the CEO of Amazon Web Services, when, again, the use of "our" is defined to include Amazon.com *and* its subsidiaries. Opp'n Mot. Dismiss Ex. 3 at 4, 6. Rather, the list is plausibly read to be a comprehensive list of Amazon.com's *and its subsidiaries'* executive officers.

**B. Motion to Transfer**

Following from the dismissal of Amazon.com from this suit, Defendants Amazon Services and AWS seek to transfer this action to the District of New Jersey ("DNJ") under the first-to-file doctrine and, separately, 28 U.S.C. § 1404(a).[10]  Mot. Transfer 1; Mem. Supp. Transfer 9, 13. Plaintiff argues that transfer should be denied because (1) the first-to-file rule is inapplicable on these facts, and (2) the § 1404(a) factors counsel against transfer.  Opp'n Mot. Transfer 6, 8. Plaintiff also contends that the first-to-file rule is not an independent basis for transfer.  *Id.* at 8. Ultimately, the Court finds that transfer is appropriate in the present circumstances, as the § 1404(a) factors weigh strongly in favor of transfer.

As an initial matter, the Court agrees with Plaintiff—and it has previously made clear— that the first-to-file rule does not constitute an independent basis for transfer but rather is one factor the Court may consider in evaluating the "interest of justice" prong of the § 1404 analysis.  *Long v. KLM*, 2024 WL 23149, at *3 (E.D. Va. Jan. 2, 2024) (collecting cases).  Accordingly, the Court will not engage with those arguments as a standalone matter.  The Court will provide an overview of the Consolidated Action and its relationship to the DNJ case, before conducting the balancing test required by § 1404.

1. Overview of the Consolidated Case vis-à-vis the DNJ Case

The parties greatly differ with respect to how much overlap exists between the instant action and the DNJ case.  Defendants posit that the overlap is extensive, representing that both actions completely revolve around Audible's technology. Mem. Supp. Transfer 4–5.  For example, Defendants assert that, "[i]n the -406 case, the complaint alleges that Amazon infringes by

---

[10]  Defendants argued in the alternative that, should Amazon.com not be dismissed from this action, the claims against Amazon Services and AWS should be severed and transferred to the DNJ, while the remaining case against Amazon.com be stayed pending outcome of the DNJ case.  Mem. Supp. Transfer 19 n.9.  This alternative request is rendered moot by the disposition of the Motion to Dismiss.

providing its 'CloudFront' content delivery network, which streams content for Audible." *Id.* at 4 (quoting -406 Am. Compl. ¶¶ 19, 54). Defendants further assert that "Plaintiff's allegations against CloudFront repeatedly rely on the use of MPEG-DASH by Audible specifically." *Id.* (citing -406 Am. Compl. ¶¶ 15, 16, 23, 24, 25, 27, 29, 30, 33, 36, 39, 40, 42, 43, 44). Relatedly, as to the -407 case, Defendants aver that, while Plaintiff's allegations relate to distinct products (namely, Prime Video and Amazon Music rather than Audible), the underlying allegations "are substantially related to the allegations against Audible because they rely on the same MPEG-DASH streaming protocol and the same CloudFront infrastructure for each asserted patent." *Id.* Defendants also note that Plaintiff's willfulness allegations in the instant action "rely on a theory that Amazon incorporated Plaintiff's technology into 'Audible platforms'—including in the -407 case "where Audible was never a defendant." *Id.* (citing -406 Am. Compl. ¶¶ 46–48; -407 Am. Compl. ¶¶ 62–64). Finally, Defendants highlight that "all of the patents asserted in this case are also asserted in the DNJ[ case,]" a fact that Plaintiff does not dispute. Mot. Transfer Reply 5.

Plaintiff vehemently disagrees as to the extent of the overlap, asserting that Amazon's arguments "lack merit and [are] manufactured purely to support its transfer arguments. Opp'n Mot. Transfer 1. Specifically, Plaintiff contends that "Amazon knows that discovery for these different accused products will involve *at a minimum different* witnesses, documents, source code, and financials. And Amazon knows Audio Pod has already served separate infringement contentions for Prime Video and Prime Music, neither of which overlaps with Audible." *Id.* (emphasis in original). Plaintiff also explains that the only common accused product is the CloudFront network, "on which each accused product/service operates." *Id.* at 5. Plaintiff acknowledges that there is "some party overlap . . . because certain Amazon entities are involved in providing the accused Audible products and service." Reply Supp. Mot. Ext. 3, n.1, ECF No. 129. Aside from this purportedly minimal overlap, however, Plaintiff posits that "the manner of

12

each party's involvement would almost certainly be distinct between the cases." *Id.* For example, Plaintiff notes that the products at issue in the Consolidated action concern Prime Video and Amazon Music, while the DNJ case concerns Audible and Kindle. Opp'n Mot. Transfer 5.

In sum, the parties agree that all patents at issue here are also at issue in the DNJ case, but the agreement ends there. Plaintiff views the mostly differing accused products as rendering these cases fundamentally distinct, while Defendants view the underlying technology linking Plaintiff's claims as indicative of substantial similarity for transfer purposes.

2. Transfer Under 28 U.S.C. § 1404(a)

Turning to the § 1404(a) analysis, "a district court must make two inquires: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Va. Innovation Scis., Inc.*, 928 F. Supp. 2d at 867 (quoting *Koh*, 250 F. Supp. at 630). Here, the parties dispute both prongs. The Court addresses each in turn.

### a. Plaintiff Could Have Filed this Case in the DNJ

The first step in the § 1404(a) inquiry is to assess whether this case "might have been brought" in the DNJ; the Court concludes in the affirmative.

Because this is an action for patent infringement, it may be brought in the judicial district where a defendant resides, or where the defendant has committed acts of infringement *and* has a regular place of business. 28 U.S.C. § 1400(b). It is undisputed that the alleged acts of infringement occurred, among other places, in the DNJ, as Plaintiff alleges that Defendants sell their allegedly infringing products "throughout the United States." -406 Am. Compl. ¶ 18; -407 Am. Compl. ¶ 14. Thus, venue is proper in the DNJ if the Defendants maintain a regular place of business in New Jersey.

13

There are three general requirements to establishing the maintenance of a regular place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Defendants contend that "Amazon Services and AWS have regular and established places of businesses in DNJ." Mem. Supp. Transfer 19. Specifically, Amazon Services "has multiple offices in New Jersey, including a corporate office in Jersey City where hundreds of its employees work." *Id.* (citing Li Decl. ¶ 6, ECF No. 116). Moreover, as to AWS, it "operates data centers and offices in New Jersey, including data centers that host the CloudFront service accused of infringement." *Id.* (citing Sumlin Decl. ¶ 2, ECF No. 120; Mem. Supp. Transfer Ex. 35 at 116:16-117:2, ECF No. 104-35). In conjunction with such operations, Defendants assert that both Amazon Services and AWS maintained employees in offices located in New Jersey as of May 30, 2024—the date this action was commenced. Reply 7 (citing Inglis Decl. ¶ 2, ECF No. 136-6). Thus, they argue, the venue requirements are satisfied.

Plaintiff generally challenges Defendants' declarations and deposition testimony, contending that they are improper to establish that the instant action could have been filed in the DNJ since the declarations "point[] to no publicly available evidence to Audio Pod at the time of filing showing that a case against AWS or Amazon Services would have properly had venue in the DNJ." Opp'n Mot. Transfer 8. Plaintiff further argues that Defendants failed to specifically name any AWS employees that allegedly work in New Jersey and failed to provide office addresses for its alleged offices. *Id.* In its view, absent such specificity, Defendant's vague statements are insufficient to demonstrate that AWS maintains a regular and established place of business in the DNJ. The Court disagrees.

First, Plaintiff provides no support for its proposition that evidence relied upon to support a transfer motion must be publicly available in advance. *See generally* Opp'n Mot. Transfer.

14

Indeed, it is not uncommon for parties seeking transfer to rely on declarations containing non-public information.  *See, e.g., Monarch Networking Sols. LLC v. Juniper Net-works, Inc.*, 2023 WL 11717092, at *3, 6 (E.D. Va. Oct. 3, 2023) (rejecting challenge to declaration that was based on non-public information and granting transfer).  Second, aside from characterizing the AWS declaration as "vague and self-serving," Plaintiff does not specifically challenge the statements therein—namely, that "AWS has hundreds of employees who work at its offices in Jersey City, New Jersey."  Sumlin Decl. ¶ 2.  Instead, Plaintiff submits that the declaration fails to identify employees by name and fails to provide office addresses.  Opp'n Mot. Transfer 9.  Plaintiff does not otherwise dispute that such employees or offices exist, only that Defendants provide insufficient detail as to their existence.  Plaintiff's argument fails for two independent reasons: one, courts routinely rely on sworn declarations such as those submitted here when assessing whether venue is proper, particularly when "Plaintiff has not disputed any of the facts set forth therein[,]"  *Huang v. Napolitano*, 721 F. Supp. 2d 46, 47 n.2 (D.D.C. 2010); two, Defendants subsequently provided some additional detail as to both Amazon Services and AWS in their Inglis Declaration.  Inglis Decl. ¶ 2 ("Many employees of Amazon Services and AWS work from offices located at 10 Exchange Place in Jersey City, New Jersey.  Amazon Services and AWS both had employees working in these offices by May 30, 2024.").

On this record, Defendants have sufficiently demonstrated that venue would have been proper in the District of New Jersey as to AWS and Amazon Services at the time this action was filed.[11]  Accordingly, the first requirement of § 1404(a)—that the action (as it now stands) could

---

[11] The "might have been brought" inquiry is assessed with respect to the parties remaining in the action at the time transfer is considered, without regard to defendants that were previously dismissed.  17 Moore's Federal Practice Civil § 111.12 4(b) (2026) ("In an action involving multiple defendants, although the action may be transferred only if, at the time the action originally was brought, the venue and jurisdictional requirements would have been satisfied as to all of them in the court to which transfer is sought . . . the action may nevertheless be transferred if the defendants as to whom venue in the transferee district would have been improper have settled or been dismissed from the action when the transfer motion is made.");  *see also Magee v. Essex-Tec Corp.*, 704 F. Supp. 543, 546 (D. Del. 1988) (finding transfer proper when defendants as to whom venue in transferee court would have been improper

15

have been brought in the transferee forum—is satisfied.  The Court therefore turns to the second step of the § 1404(a) analysis.

### b. The Balance of Convenience Factors Weigh in Favor of Transfer

At the second and final step of the § 1404(a) analysis, the Court must consider four factors: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) witness convenience and access; and (4) the interest of justice.  *Heinz Kettler*, 750 F. Supp. 2d at 667 (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)).  Considered together, these factors weigh strongly in favor of transfer, compelling the Court to grant Defendants' Motion.

### i. *Plaintiff's choice of forum is entitled minimal weight.*

The general rule that "a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate," *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F. 3d 436, 444 (4th Cir. 2015) (cleaned up), is conditioned on the plaintiff establishing "a legitimate connection to the district" in the first instance, *Pragmatus AV, LLC*, 769 F. Supp. 2d at 995.  In this District, courts "have previously held in patent cases that it may be appropriate to afford a plaintiff's choice of forum 'minimal weight,' when the plaintiff has few business activities in the district and is appropriately classified as a 'non-practicing entity,' that 'does not research and develop new technology,' but instead merely 'acquires patents, licenses the technology, and sues alleged infringers.'"  *Glob. Touch Sols., LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 896–97 (E.D. Va. 2015) (quoting *Pragmatus AV, LLC*, 769 F. Supp. 2d at 995, and collecting cases).

This case presents precisely that scenario.  Defendants contend that Plaintiff is a "non-practicing entity," describing its presence in this District as "recent and ephemeral" and noting that

---

had been dismissed from action at time of transfer motion); *Victory Int'l v. Perry Ellis Int'l*, 2008 WL 65177, at *9 (D.N.J. Jan. 2, 2008) ("Because this Court has dismissed the Complaint for lack of personal jurisdiction over Nussdorf, the motion to transfer is relevant only to the remaining sixteen defendants.").

it is "an LLC formed [in Virginia] less than one year before filing this lawsuit with no Virginia-based employees or operations." Mem. Supp. Transfer 14. Further, Defendants argue that Audio Pod is controlled from Canada and financed by a hedge fund in New York. *Id.* at 3–4, 14.

Audio Pod disagrees that its choice of forum is entitled to minimal weight, contending that its choice is instead "paramount" under the § 1404(a) framework because its "chosen counsel is located here" and it "chose to incorporate in Virginia." Opp'n Mot. Transfer 9. But Plaintiff does not dispute Defendants' characterization of it as a non-practicing entity. *See generally.* Opp'n Mot. Transfer. Indeed, Plaintiff cites *SoundClear Technologies v. Amazon.com, Inc.* to support its contention that its chosen venue is entitled to paramount weight—despite its non-practicing status—but the *SoundClear* decision in fact supports Defendants' position as to the lesser weight afforded to non-practicing entities. 2024 WL 5237648, at *4 (E.D. Va. Nov. 8, 2024) ("Since SoundClear is a non-practicing entity that has not developed products or licensed its technology for use in products, with no employees in Virginia, SoundClear lacks the contacts that usually result in substantial weight being afforded to plaintiff's choice of home forum.").[12]

Accordingly, considering the undisputed facts that Plaintiff was formed less than a year before commencing the instant action, conducts no operations within Virginia (or elsewhere), and has no employees in Virginia, the Court concludes—consistent with decisions in this District—that Plaintiff's choice of venue is entitled to only minimal weight in the Court's § 1404(a) analysis.

---

[12] In *SoundClear*, the court decided that the plaintiff's choice of forum was "entitled to some deference"—notwithstanding its status as a non-practicing entity—because the defendant (Amazon.com, Inc.) maintained one of its headquarters "in Arlington, Virginia and [was] involved in bringing the accused products to market," meaning "Virginia ha[d] unique ties to the underlying claims . . . ." *Id.* Such is not the case here, where Amazon.com has been dismissed from the action, and the remaining Defendants—AWS and Amazon Services—do not maintain facilities or employees in Virginia.

## ii. *The convenience of the parties favors transfer.*

In assessing the relative convenience of the parties, courts must consider "ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (quoting *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)). "When weighing this factor, 'the logical starting point is a consideration of the residence of the parties.'" *King v. Corelogic Credco, LLC*, 2018 WL 2977393, at *5 (E.D. Va. June 13, 2018) (quoting *Mullins v. Equifax Info. Servs.*, LLC, 2006 WL 1214024, at *6 (E.D. Va. Apr. 28, 2006)).

Defendants have convincingly shown that the parties' convenience weighs in favor of transfer to DNJ. Looking first to the parties' respective residences, Plaintiff—although nominally a resident of Virginia—has only a recent and ephemeral connection to the state, as explained *supra*. And neither remaining Defendant is a resident of Virginia. Amazon Services is a limited liability company with its principal place of business in Seattle, Washington, while AWS is a corporation incorporated in Delaware with its principal place of business in Seattle, Washington. -406 Am. Compl. ¶¶ 5–11. And while Amazon's HQ2 is located in Arlington, Virginia, this parent-company general corporate presence in the forum carries limited weight where such presence is not tied to the events giving rise to the instant dispute. *See In re Apple Inc.*, 979 F.3d 1332, 1344–45 (Fed. Cir. 2020) ("The district court thus misapplied the law to the facts by so heavily weighing Apple's general contacts with the forum that are untethered to the lawsuit," including a "second campus"); *Schrader-Bridgeport Int'l, Inc. v. Cont'l Auto. Sys. US, Inc.*, 2012 WL 503602, at *2 (W.D. Va. Feb. 15, 2012) (declining to assess defendant's true principal place of business when conducting a § 1404(a) analysis because "the specific location of relevant witnesses[] matter more to the transfer analysis than does [defendant's] formal principal place of business"). Because no HQ2 employees—or any Virginia-based Amazon employees—are alleged to possess knowledge

18

relevant to the claims at issue, HQ2's presence in this District is of little significance to the transfer analysis.  Thus, the Court does not find the case to be anchored to Virginia based on any party's purported residency.

Next, considering the ease of access to sources of proof, courts have recognized that when information is available electronically, this "factor is *de minimis* and not entitled to substantial weight."  *Hill-Green v. Experian Info. Sols., Inc.*, 2020 WL 5539042, at *8 (E.D. Va. Sep. 15, 2020) (collecting cases).  Accordingly, Defendants' representations about the location of physical documents in Audible's DNJ offices, Mem. Supp. Transfer 14, is insignificant.  Indeed, Defendants do not represent that these documents cannot be transmitted electronically, and Plaintiff notes that "documentary evidence produced to date in this action has been done electronically without any complication based upon party or attorney location[,]" *see* Opp'n Mot. Transfer 13.  Thus, this consideration does not materially support transfer.

Nonetheless, the cost of obtaining witness testimony and the availability of compulsory process weigh in favor of transferring this case to the DNJ.  As an initial matter, neither party identifies a single potential witness—party or non-party—or any relevant hard-copy documents located in EDVA.  Mem. Supp. Transfer 14–15; *see generally* Opp'n Mot. Transfer.  This is so notwithstanding Amazon's corporate presence in Northern Virginia through its HQ2 operations.  Moreover, although Plaintiff states that its principals are located in Ottawa, Canada and would prefer to travel to Richmond rather than Newark, that preference does not render travel to Newark—which is geographically closer to Ottawa and home to a commonly frequented international airport—meaningfully inconvenient.[13]

---

[13] Plaintiff states that the "D.C. airport alone makes [EDVA] preferable over DNJ" because "Newark is well-known for its consistent travel delays and persisting staffing shortages."  Opp'n Mot. Transfer 12 (citing Ex. 2, ECF No. 134-4; Ex. 3, ECF No. 134-5).  This is a speculative complaint, however.  Moreover, even if the Court were to accept that proposition, Plaintiff disregards the fact that travel onwards from D.C. to Richmond, Virginia involves further logistics and potential for delay.

Further, there are no alleged witnesses that reside within the subpoena power of this District.  Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).  Here, Defendants identify "[a]t least three important third-party witnesses" who possess "knowledge that is material to critical issues of patent invalidity and willfulness," all of whom reside in New York or New Jersey and therefore fall within the subpoena power of the District of New Jersey, but not the Eastern District of Virginia.  Mem. Supp. Transfer 7–9, 14; Mot. Transfer Reply 8–9.  In addition, Defendants identify certain employees with relevant knowledge regarding various products and issues of consequence in this matter, who also live in close proximity to—if not within—the District of New Jersey.  Mem. Supp. Transfer 6–9 (identifying Ronak Patel and Alexander Galkin, both of whom live in New Jersey, and Guy Story, who lives "less than 15 miles from the Newark, New Jersey courthouse where the DNJ case is pending").

Plaintiff contends that the availability of compulsory process in the DNJ is irrelevant because Amazon has not proven that the aforementioned non-party witnesses would refuse to testify willingly.  Opp'n Mot. Transfer 21–22.  Plaintiff's argument fails for two reasons.  First, as Defendants correctly note, non-party witnesses are presumed unwilling to testify absent evidence to the contrary.  *See In re Pandora Media, LLC*, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021) ("[W]e have held that 'when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling.'" (quoting *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014)).  Second, Defendants contacted three non-party witnesses to inquire whether they would be willing to testify in Richmond.  Mot. Transfer Reply Ex. 7 ("Choi Decl.") ¶¶ 2–3.  Two failed to respond,

20

and one expressly stated that she "would not be willing to travel to Richmond, VA." *Id.* ¶ 3. Accordingly, even if Defendants were required to affirmatively demonstrate that their non-party witnesses are unwilling to testify, the proffered declaration strongly suggests that such witnesses would be unwilling. In sum, because Amazon identifies third-party witnesses within the compulsory process power of the DNJ, and because Plaintiff identifies no witnesses within EDVA or within its compulsory process power, this consideration favors transfer. *See Xtone, Inc. v. Amazon.com, Inc.*, 2026 WL 473125, at *6 (E.D. Va. Feb. 19, 2026) ("Plaintiff has not quantified what witnesses or evidence may be in this District. By contrast, Defendants have put forward strong evidence regarding the magnitude of evidence and witnesses relevant to the alleged infringement that are located on the West Coast and, more specifically, in WDWA."); *see also Pragmatus*, 769 F. Supp. 2d at 995–96.

Plaintiff raises two additional arguments in support of its contention that the convenience of the parties factor weighs against transfer. First, Plaintiff argues it has already devoted "significant time and resources to several dispositive motions" and "is currently finalizing its reply briefing on claim construction positions to the Court"—and, if the matter is transferred, Plaintiff "will have all of its work with regard to patent validity and claim construction mooted—or at least subject to possible re-litigation." Opp'n Mot. Transfer 12–13. This argument is unavailing; it is well-accepted law in the Third Circuit (which encompasses DNJ) that a "transferee court should not independently re-examine an issue already decided" by a transferor court. *Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). Thus, Plaintiff's concerns about wasted resources on dispositive motions adjudicated by the undersigned are unfounded. And to the extent Plaintiff argues that its claim construction work would be mooted, any lost work in that regard pales in comparison to the efficiencies to be gained by transferring this action to the DNJ, where one court can preside over each patent, product, and party at issue.

Second, Plaintiff argues that any inconvenience arising from witnesses located in other states may be mitigated by having remote witnesses testify by contemporaneous transmission from different locations pursuant to Fed. R. Civ. P. 43(a).  Opp'n Mot. Transfer 13.  But that rule is to be invoked only in "compelling circumstances."  Fed. R. Civ. P. 43(a); *see also Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010) ("Although Rule 43 provides some flexibility in accepting remote testimony, it seems obvious that remote transmission is to be the exception and not the rule.").  Indeed, "[t]he importance of presenting live testimony in court cannot be forgotten." *Halig v. Nat'l Bd. of Exam'rs of Optometry*, 2025 WL 2661785, at *2 (D. Md. Sept. 17, 2025) (quoting Fed. R. Civ. P. 43 advisory committee's note to 1996 amendments).  As such, courts in this Circuit have noted that remote testimony is typically reserved for "unexpected reasons, such as accident or illness," and that "a party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Tharpe v. Lawidjaja*, 2013 WL 5939702, at *3 (W.D. Va. Nov. 5, 2013) (quoting Fed. R. Civ. P. 43 advisory committee's note to 1996 amendments).  Thus, Plaintiff's suggestion that Defendant's non-party witnesses will all qualify to testify remotely is premature and presumptuous, as that determination is reserved for the Court's discretion.  *See United States v. Kivanc*, 714 F.3d 782, 791 (4th Cir. 2013).

In sum, after considering the parties' arguments with respect to their respective convenience and inconvenience, the Court finds that this factor weighs in favor of transfer.

### iii.  *The convenience of the witnesses favors transfer.*

In terms of witness convenience, "[t]he party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Heinz Kettler*, 750 F. Supp. 2d at 668.  "Typically, . . . a distinction is drawn

22

between party and non-party witnesses." *Mullins*, 2006 WL 1214024 at \*7.  "Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." *Id.* (citation omitted).  "The convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer." *Id.* (citation omitted).  Importantly, "[w]hen the appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, this factor becomes less important." *Id.* at \*8 (cleaned up).

With respect to the convenience of the witnesses, Defendants argue that this factor strongly favors transfer to the DNJ because several witnesses with knowledge of the accused technology are located closer to, if not within, that forum.  Mem. Supp. Transfer 15–16.  Defendants contend that Audible employees who are knowledgeable about the design, development, and operation of the accused features and underlying technology work in New Jersey, making DNJ more convenient for those witnesses.  *Id.*  Defendants further assert that DNJ would also be more convenient for Amazon employees located in Seattle and Northern California because direct flights to Newark are shorter and more readily available than flights to Richmond.  *Id.*  Defendants also emphasize that the convenience of non-party witnesses—afforded greater weight in the transfer analysis—favors transfer because several third-party witnesses reside in New York and New Jersey and the inventors of the asserted patents reside in Ottawa, which is geographically closer to Newark than Richmond.  *Id.* at 16.  Defendants additionally note that Plaintiff has not identified any relevant witnesses located in this District.  *Id.*

Plaintiff responds that Defendants have not met their burden to demonstrate witness inconvenience because they have not sufficiently identified which witnesses are expected to testify or described the materiality of their anticipated testimony.  Opp'n Mot. Transfer 13–16.  In support,

23

Plaintiff cites *Samsung Electronics Co. v. Rambus, Inc.*, which states that "[t]he party asserting witness inconvenience has the burden to proffer, by an affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of the evidence and the degree of inconvenience." 386 F. Supp. 2d at 718–19. Plaintiff argues that Defendants' declarations provide only vague descriptions of employees and do not enable the Court to assess the relevance or necessity of their testimony. Opp'n Mot. Transfer at 14–16. Plaintiff further contends that Defendants have not shown that any witnesses would be unwilling to travel to Virginia or that appearing in EDVA would impose a meaningful hardship. *Id.* at 16–17. Plaintiff also argues that many Amazon witnesses are located on the West Coast and must travel regardless of forum, and that any remaining inconvenience may be mitigated through remote depositions, just as all depositions in this case to date have occurred remotely. *Id.* at 16–18. Finally, Plaintiff asserts that the inventors of the asserted patents are willing to travel to Virginia for trial. *Id.* at 17.

Defendants reply that they have sufficiently identified material witnesses and described their roles in the design and development of the accused technology. Mot. Transfer Reply 11–12. Defendants further argue that Plaintiff improperly conflates the requirement to identify the subject matter of testimony with the requirement to predict the precise testimony witnesses will offer at trial. *Id.* at 12–13. Defendants also emphasize that transfer motions are typically filed early in litigation, when parties cannot yet identify with precision which witnesses will ultimately testify at trial or the exact substance of their testimony. *Id.* at 14. Defendants therefore contend that it is sufficient at this stage to identify individuals with knowledge of the accused technology and describe the general subject matter of their knowledge so the Court can assess the likely sources of relevant evidence and the relative convenience of the competing forums. *Id.*

24

After considering the parties' arguments, the Court finds that the convenience-of-the-witnesses factor weighs in favor of transfer. Although Plaintiff argues that Defendants failed to identify which witnesses will testify at trial or describe their testimony with sufficient specificity, that criticism overlooks the procedural posture of a transfer motion. As Defendants note, a transfer motion "must be brought at an early stage in litigation when it is typically difficult to anticipate the identity of trial witnesses, or the matters upon which they will testify." *Monarch Networking Sols. LLC*, 2023 WL 11717092, at \*6 (E.D. Va. Oct. 3, 2023) (quoting *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 800 (E.D. Va. 2004)). Accordingly, courts evaluating transfer motions routinely rely on preliminary witness identifications describing the subject matter of a witness's knowledge rather than requiring parties to identify their final trial witnesses at the outset of litigation. While this matter has made some progress through the 12(b)(6) stage, it is still in a relatively infant stage.

Separately, although Defendants emphasize that travel to Newark is somewhat easier than travel to Richmond for Amazon employees located in Seattle and Northern California, the Court affords that distinction limited weight, as those witnesses would be required to travel across the country regardless of whether the case proceeds in EDVA or DNJ. The fact that travel to Richmond may require a connecting flight, whereas Newark may offer more direct routes, does not materially alter that analysis. Just as the Court did not place weight in Plaintiff's preference for flights to D.C. over Newark, so too does it decline to place weight on Defendants' witnesses' simple preferences.

Instead, the more significant considerations are that neither party identifies any witnesses or relevant evidence located in Virginia, and that several allegedly material non-party witnesses reside in New York and New Jersey. While Plaintiff disputes whether Defendants have satisfied their burden to demonstrate that these alleged witnesses are, in fact, material, the Court disagrees.

25

Defendants identify several third-party witnesses with knowledge relevant to issues of patent invalidity and willfulness, as well as employees knowledgeable about the design and development of the accused technology. Courts in this District have found such witnesses material. *Sunstone Info. Def., Inc. v. F5 Network, Inc.*, 2021 WL 5804571, at *4 (E.D. Va. Dec. 7, 2021) ("[W]itnesses involved in the *design and manufacture* of the accused products are material." (quoting *Glob. Touch Sols. v. Toshiba Corp., LLC*, 109 F. Supp. 3d 882, 900 (E.D. Va. 2006)) (emphasis in original); *see also Acterna LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2006); *Macronix Intern. Co., Ltd. v. Spansion Inc.*, 2014 WL 934521, at *2 (E.D. Va. Mar. 10, 2014). Because these witnesses are material and fall within the subpoena power of the District of New Jersey—but not this Court—the compulsory process considerations further favor transfer, particularly given that Plaintiff identifies no witnesses located in EDVA. *See Xtone, Inc.*, 2026 WL 473125, at *7 (first citing *Bascom Research, LLC v. Facebook, Inc.*, 2012 WL 12918407, at *2 (E.D. Va. Dec. 11, 2012), then citing *SZ DJI Tech. Co. v. Bell Textron Inc.*, 2023 WL 6541848, at *7 (E.D. Va. Oct. 6, 2023)).

Accordingly, because no witnesses are identified in EDVA and several material non-party witnesses fall within the DNJ's compulsory process, the Court concludes that the convenience-of-the-witnesses factor weighs in favor of transfer.

#### iv. *The interests of justice favor transfer.*

The interests of justice is the final factor this Court must consider under the second prong of the § 1404(a) analysis. *See Heinz Kettler*, 750 F. Supp. 2d at 667. This "factor 'encompasses public interest factors aimed at systemic integrity and fairness.'" *Id.* at 669 (quoting *Byerson*, 467 F. Supp. 2d at 635). "Most prominent among the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Byerson*, 467 F. Supp. 2d at 635. Fairness, on the other hand, "is assessed by considering factors such as docket congestion, interest

in having local controversies decided at home, knowledge of the applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* "Foremost" among these factors is the "interest in deciding a local controversy." *Automated Tacking Solutions, LLC v. ValidFill, LLC*, 2015 WL 9025703, at \*4 (E.D. Va. Dec. 15, 2015). Additionally, as previously noted, the first-to-file rule is "properly considered as a component of the interest of justice" inquiry. *Byerson*, 467 F. Supp. 2d at 635.[14]

### A. This is not a local controversy.

Defendants argue that the interests-of-justice factor strongly favors transfer because the DNJ is already presiding over a related action involving the same patents, same parties, and some product/technology overlap. Mem. Supp. Transfer 16–17. Defendants contend that allowing both cases to proceed simultaneously in different courts risks duplicative litigation and inconsistent rulings on issues such as claim construction, validity, and infringement. *Id.* Defendants further assert that transferring this action would promote judicial economy by allowing a single court to resolve disputes involving the same patents and related technology. *Id.* at 17. Defendants also argue that EDVA has little local interest in adjudicating this dispute because (1) Plaintiff's presence is recent and ephemeral, having been incorporated shortly before filing this lawsuit and

---

[14] The application of the first-to-file rule is discretionary. *See Gibbs v. Haynes Invs., LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va. 2019) ("If two actions fall within the scope of the first-to-file rule, the decision to apply the rule 'is an equitable determination that is made on a case-by-case, discretionary basis.'"); *see also Robert Bosch, LLC v. Westport Fuel Sys. Can., Inc.*, 2023 WL 1422308, at \*9 (E.D. Va. Jan. 31, 2023) ("The first-to-file rule 'is not rigidly or mechanically applied' and district courts are afforded 'an ample degree of discretion' in choosing how to deal with potentially duplicative litigation")) (quoting *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012)).

The parties dispute whether the DNJ case was first filed. Defendants posit that the DNJ case was technically filed first because it is the result of a transferred claim from the Norfolk case, which was filed on March 20, 2024—three months prior to the filing of the now-Consolidated Action. Mem. Supp. Transfer 10. Plaintiff disagrees, contending that the date upon which the DNJ case was transferred is the proper date for assessing the first-to-file rule. Opp'n Mot. Transfer 7. The Court need not resolve this dispute because it finds transfer proper without consideration of the discretionary first-to-file rule (regardless of how it may apply), because (1) only the DNJ has jurisdiction to resolve the dispute between all relevant parties, and (2) the DNJ has a far stronger connection to the issues underlying the matter given the Defendants' stronger **relevant** presence in the DNJ.

conducting no operations in Virginia; and (2) "the center of the accused activity is in the DNJ." *Id.* at 16–17.

Plaintiff responds that the interests-of-justice factor weighs against transfer because this case has already progressed significantly in this District. Resp. 18–19. Plaintiff emphasizes that the parties have already litigated several dispositive motions and claim construction issues before this Court. *Id.* Plaintiff therefore contends that transferring the case at this stage would waste the Court's prior efforts and undermine judicial economy. *Id.* at 19. Plaintiff also argues that Defendants' motion is untimely because it was filed after substantial litigation activity had already occurred in this Court. *Id.* Plaintiff further argues that Defendants exaggerate the overlap between this case and the DNJ litigation because the actions involve different accused products, different witnesses, and distinct factual records. *Id.* at 19–20. Plaintiff additionally asserts that EDVA has an interest in resolving disputes filed in this District and that transferring the case would delay resolution of the dispute. *Id.* at 20–21.

Defendants reply that the overlap between the cases is substantial because the same patents are asserted in both actions, the same underlying technology is at issue in both actions, and the same parties appear in both actions. Mot. Transfer Reply 15–16. Defendants therefore reiterate that allowing both actions to proceed in parallel would risk inconsistent rulings on claim construction and patent validity. *Id.* at 16–17. Defendants also note that they filed the instant motion less than one month after Plaintiff's Amended Complaint, which replaced the wrongly named party (Amazon.com LLC) with the correct party (Amazon.com Services, LLC). Mot. Ext. Resp. 3, ECF No. 128. Defendants further assert that, prior to this correction, they could not reasonably move to transfer because the "wrongly named defendant has no operations in New Jersey." *Id.* Relatedly, Defendants argue that any progress made in this Court does not outweigh

the efficiency gained by allowing a single court to preside over the instant action and DNJ case, given that they implicate the same patents and some of the same technology.  Reply 17–18.

After considering the parties' arguments, the Court finds that the interests-of-justice factor weighs in favor of transfer.  As explained *supra*, the foremost consideration within the interest-of-justice factor is the interest in deciding a local controversy.  Virginia has little to no interest in this matter because Plaintiff is a non-practicing entity whose connection to the Commonwealth appears limited to its recent incorporation and whose operations are not alleged to occur in Virginia; and, absent such a specific local interest, generalized claims that infringing products are sold in EDVA —as they are throughout the country—carry little weight.  *See Automated Tracking*, 2015 WL 9025703, at *3 ("As detailed above, the fact that ATS appears to be a 'non-practicing' entity based in Alexandria has minimal jurisdictional significance, and thus does little to support ATS's contention that this is a local issue."); *see also NanoEnTek, Inc. v. Bio-Rad Laboratories, Inc.*, 2011 WL 6023189, at *7 (E.D. Va. Dec. 2, 2011) ("It is true that the citizens of this District have no special interest in the outcome of this case.  No manufacturing occurred here, and to the extent any infringement occurred through product sales, this District is certainly not unique.").

Plaintiff resists this outcome by citing Amazon's HQ2.  Opp'n Mot. Transfer 19 (noting HQ2 "currently houses some 8,000 corporate jobs and expects to grow to as many as 25,000" and "provides large conference spaces for its employees to visit and gather there").  Thus, in Plaintiff's view, "Amazon's motion thus establishes no connection to the DNJ that even approaches—let alone clearly exceeds—its connection to the EDVA." *Id.*  Plaintiff's proposition might carry some force if Defendant's general business presence in Virginia, relative to DNJ, were sufficient to establish a meaningful connection to this dispute.  *See Xtone, Inc.*, 2026 WL 473125, at *6 (finding HQ2's presence "unpersuasive" where the plaintiff failed to show that the campus was "relevant"

29

to "the convenience to the parties to *litigate this* case" (emphasis in original)).[15]  But § 1404(a) does not turn on the size of a defendant's corporate footprint in a forum; it turns on the forum's connection to the dispute.  *Id.*  Indeed, it is notable that, notwithstanding HQ2's massive footprint, Plaintiff identifies no witnesses or documents tied to that campus.  Courts in this District are wary of presiding over cases with a minimal substantive connection to the state.  *Pragmatus*, 769 F. Supp. 2d at 997 ("Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district.").  By contrast, it is undisputed that at least some of the patents at issue in this case are closely connected to Audible and, more broadly, to New Jersey.  Accordingly, this consideration favors transfer.

### B.  Judicial economy is advanced by transfer to the DNJ.

Separately, considerations such as judicial economy and the avoidance of inconsistent rulings also favor transfer.  Although Plaintiff argues that this case has progressed meaningfully in this District, that consideration does not outweigh the efficiencies gained by consolidating related litigation in a single forum.  Nor does Plaintiff's assertion that the motion was filed too late alter the Court's analysis, particularly where the motion was filed shortly after Plaintiff filed the Amended Complaint(s), which themselves made apparent certain bases for transfer.   While this Court has addressed certain motions and case management issues, the core merits of the dispute—including claim construction and substantive patent issues—remain intertwined with the parallel litigation pending in the District of New Jersey.  Resolving those issues in one forum will reduce the likelihood of conflicting rulings and streamline the adjudication of the parties' disputes, which is certainly in the interest of justice.  *See Gonzalez v. Homefix Custom Remodeling, Corp.*, 670 F.

---

[15] Although this discussion of HQ2's presence arose within the court's convenience-of-the-parties analysis, the Court finds that the reasoning applies with equal force to the local-interest component of the interests-of-justice factor, as both inquiries turn on whether the forum has a meaningful connection to the dispute.

Supp. 3d 337, 347 (E.D. Va. 2023) ("[I]t is well-settled that transfer under § 1404(a) is generally in the interest of justice if a decision not to transfer would lead to courts rendering inconsistent judgments on the same issue." (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960), and citing *Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 489 (4th Cir. 1985))). Simply put, allowing a single court to preside over these cases will promote judicial efficiency and conserve judicial resources.

This Court cannot accomplish that end because Audible—a party previously included in the instant action—was dismissed for improper venue and therefore those aspects of Plaintiff's claims cannot be litigated here. Although Plaintiff avers that the DNJ matter is broader than the instant case, it nevertheless concedes that the actions share at least some overlap. The Court finds that this fact further supports transfer, as the DNJ action will provide a more comprehensive resolution of the related infringement disputes.

Accordingly, because transferring this action does not rob this Court of a local controversy and will otherwise promote judicial economy, reduce the risk of inconsistent judgments, and consolidate related patent disputes before a single court, the Court concludes that the interests-of-justice factor weighs in favor of transfer. And so finding, the Court further finds that transfer is appropriate pursuant to 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim against Amazon.com, and so that party is subject to dismissal. Further, faced with the remainder of this action against only Amazon Services and AWS, the Court concludes that the circumstances of this case ultimately weigh in favor of transferring the action to the District of New Jersey, where it can be litigated alongside Plaintiff's original claims once lodged against Audible.

31

An appropriate order dismissing Amazon.com and directing the transfer of this action having already been entered, *see* ECF No. 163, this concludes the Court's prerogative.

_____/s/_____
Roderick C. Young
United States District Judge

Date:  June 18, 2026
Richmond, Virginia

32